[No. B220199. Second Dist., Div. Three. Jan. 30, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY,
Defendant and Appellant.

## COUNSEL

Law Offices of Brendan Pegg and Brendan Pegg for Defendant and Appellant.

Ralph L. Rosato, Assistant County Counsel, and Joanne Nielsen, Principal Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Indiana Lumbermens Mutual Insurance Company (Indiana), the surety on a bail bond, appeals an order

denying its motion to vacate the forfeiture of a $625,000 bond and to exonerate bail.[1] We affirm the trial court's order denying the surety's motion.

Two felony cases were pending in the Los Angeles Superior Court against criminal defendant Joseph Parseg Mkrtchyan (Mkrtchyan): (1) a single-count robbery case (Pen. Code, § 211) in the west district, at the Airport Courthouse (the Airport case), in which Mkrtchyan was released on his own recognizance and (2) an 11-count robbery case in the northwest district, at Van Nuys Courthouse West (the Van Nuys case), in which Indiana had issued a $625,000 bond.[2] At the time Indiana issued said bond in 2008, both cases were in existence. The Los Angeles Superior Court subsequently consolidated the two cases in Van Nuys, with the airport robbery charge added as count 12 to the Van Nuys case. Mkrtchyan thereafter failed to appear and the bond was forfeited.

Indiana contends the addition of new and unrelated charges to the bail bond after it was posted constituted a material change in the conditions of the bond, so as to require exoneration of the bond.

The original felony complaint in the Van Nuys case alleged a robbery spree by Mkrtchyan in Los Angeles County during December 2002, including robberies committed by him on December 5 and 6 of 2002; the felony complaint in the Airport case alleged Mkrtchyan committed a robbery on December 5, 2002. On this record, the trial court reasonably could conclude the December 5 robbery count alleged in the Airport case was based upon acts supporting the complaint filed against Mkrtchyan in the Van Nuys case. Further, the addition of count 12 to the felony complaint in the Van Nuys case was a "duly authorized amendment" thereof within the meaning of the bond. Consequently, the language of the bond issued by Indiana in the Van Nuys case encompassed the additional robbery charge that ultimately was added to the charges pending against Mkrtchyan in the Van Nuys case.

Even assuming the December 5, 2002 robbery charge, which originally appeared in the felony complaint in the Airport case but later was added to the Van Nuys case as count 12, was unrelated to the charges in the Van Nuys case, the result would be the same. Before the two cases were consolidated on January 6, 2009, Mkrtchyan was free on his own recognizance in the Airport case and he was out on the $625,000 bond in the Van Nuys case. The consolidation of the two cases on January 6, 2009, did not increase Mkrtchyan's motivation to flee. Irrespective of whether Mkrtchyan was being prosecuted on the various

---

[1] An order denying a motion to vacate forfeiture and exonerate the bail bond is an appealable order. (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 542 [92 Cal.Rptr.3d 767] (*Fairmont*).)

[2] All further statutory references are to the Penal Code, unless otherwise specified.

robbery counts by way of two felony complaints or a single consolidated complaint, he was facing the same charges after the consolidation as before, and he stood to forfeit the same $625,000 if he failed to appear. Under the circumstances of this case, the inclusion of the robbery count filed in the Airport case with the charges filed in the Van Nuys case did not materially alter Indiana's risk therein.

For these reasons, we perceive no abuse of discretion in the trial court's ruling and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Mkrtchyan had two felony robbery cases pending against him. One of the cases, No. SA047386, the Airport case, involved a single count of second degree robbery. The other case, *People v. Indiana Lumbermans Mutual Ins. Co.* (Super. Ct. L.A. County, 2009, No. LA042180), the Van Nuys case, initially involved 10 counts: six counts of second degree robbery, one count of attempted second degree robbery, and three counts of receiving stolen property. In March 2003, Mkrtchyan, who was out on bail, failed to appear in both cases, bench warrants were issued and his $500,000 bail was forfeited.

Five years later, in August 2008, Mkrtchyan was apprehended at Los Angeles International Airport. Upon being recaptured, the bench warrants in both cases were recalled and quashed. Mkrtchyan was remanded into custody.

In the Van Nuys case, which now consisted of 11 counts, Mkrtchyan was released on Indiana's $625,000 bond, executed on August 28, 2008. In the Airport case, Mkrtchyan inexplicably was released on his own recognizance. The $625,000 bond in the Van Nuys case is the subject of this appeal.

On January 6, 2009, on the People's motion and with no objection by the defense, the trial court ordered the single-count Airport case consolidated with the Van Nuys case, with the airport count added as count 12 to the Van Nuys case. Bail was unchanged. It remained at $625,000 in the consolidated case because Mkrtchyan had been released on his own recognizance in the Airport case.

On June 23, 2009, Mkrtchyan failed to appear for trial in the consolidated case. As a result, the $625,000 bond was forfeited and an arrest warrant was issued.

On July 30, 2009, Indiana filed a motion to vacate the forfeiture and exonerate the bond. Indiana contended the trial court lost jurisdiction over the

bond by applying it "not only to secure the appearance on the charges for which it was posted [(i.e., the 11 counts in the Van Nuys case)], but also applying the bond to an additional unrelated criminal act [(i.e., the single-count Airport case)] after the bond had been posted." Indiana argued the increased risk on the bond, without its consent, terminated its obligation on the bond.

In opposition, the People pointed out that Mkrtchyan was free on his own recognizance in the Airport case; therefore, when the Airport case was consolidated with the Van Nuys case, the bail was not increased. Thus, the consolidation of the two cases had no effect on Indiana.

The People further disputed Indiana's contention the consolidation of the single-count Airport case with the 11-count Van Nuys case altered the risks and nature of Indiana's bond on the Van Nuys case—the one added count of robbery from the Airport case was almost identical to the charges in the Van Nuys case. The People further argued the $625,000 bond was not extended to the robbery count which had originated in the Airport case; the bond was unchanged from when Indiana originally contracted with Mkrtchyan.

On September 17, 2009, the trial court denied Indiana's motion to vacate the forfeiture and exonerate bail.

Indiana filed a timely notice of appeal from the order.

## CONTENTIONS

The surety contends the trial court violated conditions of the bond by applying it to secure the appearance of Mkrtchyan for an additional criminal act that was not related to the charges for which the bond was posted.

## DISCUSSION

1. *Standard of appellate review.*

The deferential abuse of discretion standard applies to the trial court's resolution of a motion to set aside a bail forfeiture, subject to any constraints imposed by the bail statutory scheme. (*Fairmont, supra,* 173 Cal.App.4th at pp. 542–543.)

2. *No abuse of discretion in trial court's ruling.*

Indiana contends the trial court violated the conditions of the bond by applying it to secure the appearance of Mkrtchyan for an additional criminal

act that was unrelated to the charges for which the bond was posted. As explained below, the consolidation of the two felony complaints, which added count 12 to the charges pending in the Van Nuys case, did not operate to exonerate the bond.

### a. *Pertinent case law.*

██ The addition of charges based on the same acts alleged in an original complaint, which charges materially increase the risk faced by the surety, does not automatically exonerate the bond. (*People v. International Fidelity Ins. Co.* (2010) 185 Cal.App.4th 1391, 1398 [111 Cal.Rptr.3d 460] (*Fidelity*).)

*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1 [104 Cal.Rptr.3d 87] (*Bankers*), illustrates the point. There, a surety posted a $17,500 bond for one Villa's release from custody; the bond stated Villa had been ordered to appear in court on charges arising under Health and Safety Code sections 11378 and 11379. (*Bankers, supra,* at p. 3.) Before Villa's appearance date, a criminal complaint was filed charging him under Health and Safety Code sections 11378 (possession for sale of one ounce or more of methamphetamine), 11379, subdivision (a) (transport for sale of one ounce or more of methamphetamine), and 11366.8, subdivision (a) (false compartment). (*Bankers, supra,* at p. 4.) Villa failed to appear at a later hearing, and the trial court ordered the bond forfeited. (*Ibid.*) Summary judgment was entered against the surety. (*Ibid.*) In a motion to set aside the summary judgment, the surety argued Villa's bail was improperly set too low and should have been set at $115,000. (*Ibid.*) "According to [the surety], the jail's mistake in improperly setting Villa's bail pursuant to the bail schedule prevented it from properly evaluating its risk in posting bail, thereby rendering the bond void." (*Ibid.*) The trial court denied the surety's motion and the surety appealed. (*Id.* at p. 5.)

The appellate court affirmed. It rejected the surety's argument that it had a common law defense to the bond forfeiture because its risk under the bond had been "materially increased." (*Bankers, supra,* 181 Cal.App.4th at p. 6.) Next, the court held, "even though the complaint included charges under [Health and Safety Code] sections 11378 and 11379 that would have resulted in a higher bail amount based on the amount of drugs involved and a third charge that was not listed on the bond, under the terms of the 'undertaking provision,' it cannot be considered to be a unilateral and material *increase* in the risk assumed by [the surety]. [The surety] was free to monitor the case and determine what charges ultimately were made in the original complaint, and free to surrender Villa pursuant to Penal Code section 1300 if it believed the bond was inadequate to cover the flight risk presented by the complaint." (*Ibid.*)

Finally, the reviewing court held that while the surety "may have analyzed its risk based on the bail set before the complaint was filed[, that] does not change the bond's language, which expressly states it undertook to guarantee Villa's appearance on '*any charge in any accusatory pleading based upon the acts supporting the complaint*' and '*all duly authorized amendments thereof.*' . . . That higher bail might have been warranted, however, does not mean [the surety's] risk materially increased, since the bond language encompassed the charges that ultimately were included in the complaint." (*Bankers, supra*, 181 Cal.App.4th at p. 7, italics added.)

Similarly, in *Fidelity, supra*, 185 Cal.App.4th at page 1395, the surety undertook to guarantee one Rojas's appearance on " '*any charge in any accusatory pleading based upon the acts supporting the complaint filed against him/her and all duly authorized amendments thereof . . . .*' " (Original italics.)

In *Fidelity*, Rojas originally was charged with attempted murder (§§ 187, subd. (a), 664, subd. (a)); second degree robbery (§§ 211, 212.5, subd. (c)); and aggravated assault (§ 245, subd. (a)(1)). Sentencing enhancements for personal use of a deadly weapon, a knife (§§ 12022, subd. (b)(1), 1192.7), and infliction of great bodily injury (§§ 12022.7, subd. (a), 1192.7, 667.5) were alleged. All crimes were alleged to have been committed against Can Quach on December 17, 2005. (*Fidelity, supra*, 185 Cal.App.4th at pp. 1393–1394.) After the surety issued a bail bond for Rojas's release, the district attorney filed an amended felony complaint which additionally charged Rojas with committing second degree robbery against another victim, Thao Nguyen, on the same date, December 17, 2005, and further alleged Rojas personally used a deadly weapon in doing so. (*Id.* at p. 1394.)

*Fidelity* held that by the express language of its bond, the surety in that case undertook to guarantee the defendant's appearance to answer "not only the charges alleged in the original complaint, but also those charges in the first amended information. Although [defendant] Rojas was subject to a greater potential maximum penalty under the first amended information than he had been under the original complaint, the charges in the first amended information were based on the same acts alleged in the complaint." (*Fidelity, supra*, 185 Cal.App.4th at p. 1393.) *Fidelity* held the language of the bond was controlling, and therefore the addition of new charges and enhancements did not exonerate the bail bond. (*Id.* at pp. 1395–1399.)

*Fidelity* also rejected the surety's reliance on "cases from other jurisdictions, in which the courts determined that *the addition of charges materially increased the risk faced by the surety*, and therefore exonerated the bond. (See *People v. Jones* (Colo.Ct.App. 1994) 873 P.2d 36 [filing of habitual

criminal charges materially increased risk that sureties assumed]; *People v. Smith* (Colo.Ct.App. 1982) 645 P.2d 864 [surety posted bond on misdemeanor charge of driving under the influence but surety's risk was materially increased when bond subsequently was applied to felony charge of driving after judgment prohibited]; *Integrity Bail Bonds v. Pinellas County Bd. of County Commissioners* (Fla.Dist.Ct.App. 2004) 884 So.2d 85 [charge increased from third degree felony, with maximum five-year sentence, to a second degree felony, with maximum prison term of 15 years, substantially increasing flight risk]; *American Bankers Ins. Co. v. Monroe County* (Fla.Dist.Ct.App. 1994) 644 So.2d 560 [defendant originally charged with marijuana trafficking but addition of conspiracy charge substantially increased surety's risk]; *State v. Ceylan* (2002) 352 N.J. Super. 139 [799 A.2d 685] [defendant's conviction on an unrelated charge and his postverdict release pending sentencing enhanced defendant's flight risk on pending manslaughter charge, making trial court's denial of surety's motion to surrender defendant and obtain exoneration on bond an abuse of discretion]; *State v. Pyles* (2002) 2002 OK CIV APP 91 [55 P.3d 473] [state increased risk to sureties after defendant was arrested for additional crimes while free on bond but was subsequently released, entitling sureties to vacation of bond forfeiture].)" (*Fidelity, supra,* 185 Cal.App.4th at p. 1400, italics & bracketed text material added.)

*Fidelity* explained, "In none of those cases did the court state or address the content of the bail bond contract, much less analyze whether the bond, like the bond at issue here, permitted filing amended complaints or amendments to the information based on the same original pleaded facts. In several of the cases, the material change involved new charges arising out of a new criminal matter filed in a different case, which is not the situation here. [Citations.]" (*Fidelity, supra,* 185 Cal.App.4th at p. 1400.)

     b.  *Los Angeles Superior Court's consolidation of the two felony complaints against Mkrtchyan, which added count 12 to the charges pending against Mkrtchyan in the Van Nuys case, did not operate to exonerate the bond.*

        (1)  *The addition of count 12 to the Van Nuys felony complaint was a duly authorized amendment thereof; therefore, the language of the bond issued in the Van Nuys case encompassed count 12.*

By way of background, the Los Angeles Superior Court is the largest court of general jurisdiction in the country and accounts for approximately one-third of the trial courts in California. The Los Angeles Superior Court serves 9.5 million county residents scattered over a geographic area of 4,000 square

miles. The Los Angeles Superior Court has nearly 600 bench officers working in 45 farflung courthouses which are spread from Pomona to Santa Monica and from Lancaster to Long Beach. (<https://www.lasuperiorcourt.org/aboutcourt/ui> [as of Jan. 30, 2012]; <http://la-sheriff.org/lasd_services/contract_law/court_srv1.html> [as of Jan. 30, 2012].)[3]

    ■ Given the cumulative reductions to the judicial branch budget in recent years, judicial economy is more important than ever. As any bail bond surety doing business in California is aware, *consolidation of related charges is favored* because it promotes efficiency and obviates the need to select an additional jury. (*People v. Smith* (2007) 40 Cal.4th 483, 510 [54 Cal.Rptr.3d 245, 150 P.3d 1224]; *People v. Ochoa* (1998) 19 Cal.4th 353, 408 [79 Cal.Rptr.2d 408, 966 P.2d 442].) As stated in *Smith*, " ' "The law prefers consolidation of charges." ' [Citations.] 'An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated.' ([Pen. Code,] § 954.)" (*People v. Smith, supra*, at p. 510.) Here, on the district attorney's motion,[4] and with no objection by the defense, the Los Angeles Superior Court properly ordered the single-count Airport case consolidated with the Van Nuys case, with the airport count added as count 12 to the Van Nuys case.

    The discrete issue presented is whether the language of the bond issued by Indiana in the Van Nuys case on August 28, 2008, encompassed count 12, which was added to the Van Nuys case on January 6, 2009.

    The language of the $625,000 bond issued by Indiana herein, similar to the bonds issued in the *Bankers* and *Fidelity* cases (*Bankers, supra*, 181 Cal.App.4th at p. 7; *Fidelity, supra*, 185 Cal.App.4th at p. 1395), provided that the surety undertook to guarantee Mkrtchyan's appearance "to answer any charge in any accusatory pleading based upon the acts supporting the complaint filed against him/her *and all duly authorized amendments thereof, in whatever court it may be prosecuted . . . .*" (Italics added.)

    The relevant inquiry is whether the addition of the airport robbery count to the Van Nuys robbery case was a duly authorized amendment in the latter case. The single-count airport felony complaint, filed December 27, 2002,

---

[3] Similarly, the Los Angeles County District Attorney's Office is the largest local prosecutorial agency in the nation. (*People v. Vasquez* (2006) 39 Cal.4th 47, 57, fn. 2 [45 Cal.Rptr.3d 372, 137 P.3d 199]; <http://da.co.la.ca.us/oview.htm> [as of Jan. 30, 2012].)

[4] Consolidation of charges also lessens the burden on prosecutorial resources.

alleged that on December 5, 2002, in the County of Los Angeles, Mkrtchyan committed the crime of second degree robbery (§ 211) from the person, possession and immediate presence of victim Golden, and that in committing said offense, Mkrtchyan personally used a firearm, a handgun, within the meaning of section 12022.53, subdivision (b). The 10-count Van Nuys felony complaint, filed January 16, 2003, alleged a series of robberies by Mkrtchyan in the County of Los Angeles between the dates of December 5 and December 30, 2002, including a second degree robbery against victim Gould on or about December 5, 2002 (count 7), and a second degree robbery against victim Peters on or about December 6, 2002 (count 6), with all the robberies involving Mkrtchyan's personal use of a firearm, a handgun. The airport robbery case and the Van Nuys robbery case involved the same class of crimes or offenses and therefore were subject to consolidation under section 954. Further, merely because the two cases involved different victims does not establish the airport and Van Nuys charges were unrelated. (*Fidelity, supra,* 185 Cal.App.4th at p. 1394 [amended complaint alleging additional charges involving another victim on same date was a duly authorized amendment].)

■ Given that the original Van Nuys complaint alleged Mkrtchyan committed a series of robberies in Los Angeles County during December 2002, including robberies on December 5 and 6, the trial court reasonably could conclude the December 5 robbery count alleged in the Airport case was based upon the same course of conduct supporting the complaint filed by the Los Angeles County District Attorney against Mkrtchyan in the Van Nuys case. Moreover, given the nature of the charges, the addition of count 12 to the Van Nuys case was a duly authorized amendment of the Van Nuys complaint. (§ 954.) Therefore, the language of the bond encompassed the additional charge that ultimately was included in the Van Nuys complaint. Accordingly, the trial court acted within its discretion in denying Indiana's motion to vacate the forfeiture and exonerate bail.

### (2)   *No increase in flight risk.*

Even assuming the December 5, 2002 robbery charge involving victim Golden, which originally appeared in the airport complaint but later was added to the Van Nuys case as count 12, was unrelated to the Van Nuys charges, the result would be the same.

Indiana's basic contention is that "the addition of an unrelated armed robbery charge [(the airport count)] to a pre-existing bail bond would certainly be viewed to be a 'material change' and a 'substantial increase in

risk' to any surety to whom the question was posed."[5] On this record, Indiana's contention the consolidation of the two cases increased Mkrtchyan's flight risk must be rejected.

Preliminarily, as the People argued below, from the surety's standpoint, this had always been a high risk case. Mkrtchyan fled the jurisdiction in 2003, his $500,000 bail was forfeited, and he was a fugitive for five years before being apprehended in 2008. Nonetheless, in 2008 Indiana undertook the risk of bonding out Mkrtchyan on the 11-count Van Nuys case for $625,000, knowing that the previous surety had to pay $500,000 for Mkrtchyan's prior failure to appear.

The consolidation of the two cases on January 6, 2009, at which time the sole robbery count in the Airport case became count 12 of the Van Nuys case, did not heighten the flight risk which Indiana undertook. It is undisputed the Airport case was already in existence at the time Indiana undertook the risk of guaranteeing Mkrtchyan's appearance in the Van Nuys case. In this regard, the declaration of Indiana's counsel in support of its motion to vacate forfeiture stated: "My review of the court records related to [Mkrtchyan] indicates that *he was being prosecuted in two separate cases, involving separate crimes, in different jurisdictions on August 28, 2008 when [Indiana] executed [its bond] to secure the release of [Mkrtchyan] on the instant case.*" (Italics added.) Thus, Indiana either knew of, or could have ascertained, the pendency of the Airport case at the time it issued the bond in the Van Nuys case.

Before the two cases were consolidated on January 6, 2009, Mkrtchyan was free on his own recognizance in the Airport case and he was out on the $625,000 bond in the Van Nuys case. The consolidation of the two cases on January 6, 2009, did not increase Mkrtchyan's motivation to flee. Irrespective of whether Mkrtchyan was being prosecuted on the various counts by way of two felony complaints or via a single consolidated complaint, he was facing the same charges after the consolidation as before and he stood to forfeit the same $625,000 if he failed to appear. Under the circumstances of this case, the inclusion of the airport robbery count in the Van Nuys case did not materially alter Indiana's risk therein.

In sum, on this record, the trial court acted within its discretion in refusing to vacate the forfeiture.

---

[5] Following oral argument, this court obtained supplemental briefing from the parties and also invited amicus curiae briefing from the California Bail Agents Association. There was no appearance by any amicus curiae.

## DISPOSITION

The order denying the motion to vacate forfeiture and exonerate bail is affirmed. Respondent shall recover its costs on appeal.

Croskey, J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 9, 2012, S200777.